# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR419-102 |
| | ) | |
| OKEMI LAWTON, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND REPORT AND RECOMMENDATION

Okemi Lawton, indicted on gun and drug charges, *see* doc. 1 (Indictment), seeks to suppress the evidence collected in a search of a residence and any custodial statements he made after he was seized, but before he was arrested.[1] *See* doc. 42. The Government opposes. Doc. 45. On October 31, 2019, the Court held a hearing on defendant's motion. Several witnesses provided testimony, as discussed below. Based on the evidence presented and the parties' arguments, defendant's motion should be denied.

---

[1] The Government moved to strike defendant's original motion to suppress, doc. 33, arguing that it failed to cite any supporting evidence. Doc. 36. The Government is correct that the original motion failed to provide the required evidentiary support. At the hearing, the parties agreed that defendant's amendment rectified the omission. Accordingly, both the original deficient motion, doc. 33, and the Government's motion to strike it, doc. 36, are **DISMISSED as moot**.

# FACTS

The factual circumstances are simple enough. Police received a complaint about suspicious activity at a residence in Savannah, Georgia. In response, officers began to surveil the property. The agent in charge of the investigation, David Baker, testified that he personally conducted the surveillance and, although he did not observe criminal conduct, he did observe suspicious activity. As the investigation progressed, a confidential informant ("CI") informed agents that narcotics were available at the residence. *See* doc. 50-2 at 2.

The CI's information led officers to conduct several "controlled buys" of narcotics using bills whose serial numbers were prerecorded. *Id.* In total, Agent Baker testified that police and CI's conducted four controlled buys, all video and audio recorded. He further testified that he was able to positively identify Lawton as the vendor in those recordings. Baker discovered Lawton's name and his criminal history by searching property and vehicle records and law enforcement databases. Based on the evidence gathered from the controlled buys, Baker applied for and received a state search warrant for the residence. *See* doc. 50-2 at 1-6 (Application, including affidavit, and warrant).

On April 9, 2019, officers prepared to execute the warrant. Agent Baker testified that their preparation involved a briefing, at which he provided all involved officers with the results of the investigation concerning Lawton and the other known residents at the house. Before the warrant was executed, and before law enforcement had revealed its presence, Lawton was observed leaving the residence. Officers followed him to a nearby gas station, where he was detained. They then transported him back to the residence where other officers were in the process of executing the warrant.

Although the exact circumstances of officers' entry are disputed, as discussed below, once they had entered the residence, they cleared it of its occupants and proceeded to search for the contraband specified in the warrant. In a back bedroom of the house, officers discovered, among other evidence, 12.5 ounces of cocaine, a firearm, over $19,000 in cash, and other paraphernalia that Baker testified were commonly associated with preparing crack cocaine. Agents also discovered a birth certificate for "Okemi Lawton."[2] After discovering the firearm, but before they

---

[2] The Government contends that this birth certificate is evidence that defendant Okemi Lawton stayed in the room. The quotations, however, are warranted by the fact that Ms. Lawton testified that she has a grandson by the same name as the defendant. There was no evidence presented at the hearing that indicated whether the

3

removed it from the house, officers checked its serial number and determined that it had been reported stolen. After discovering the evidence, Baker transported Lawton to a police station, where he was placed under arrest and Mirandized. He completed a written "Constitutional Rights Form," and consented to be interviewed. Doc. 45-4. Baker testified that during his interrogation, Lawton never asked for an attorney or invoked his right to remain silent.

The Court also heard testimony from one of the agents who initially detained Lawton. Agent James Boger testified that officers followed Lawton to a nearby gas station. As he prepared to leave, officers observed him making a call on a cell phone. They immediately approached him and detained him. At that point, Lawton was driven back to the residence. Boger testified that, after he was detained, none of the officers asked Lawton any questions.

Finally, Delores Lawton, defendant's mother and the permanent occupant of the residence, testified about defendant's more limited occupancy. She testified that the defendant was a regular visitor but did not live at the residence. In addition to herself, several of her teenaged

---

birth certificate discovered in the back bedroom was defendant's or that homonymous grandson's.

grandchildren lived there. She also testified that she has a twenty-six-year-old grandson, whose name, like the defendant, is "Okemi Lawton." He had lived at the residence, but had moved to Atlanta, Georgia approximately one month before the warrant was executed. She also testified that the back bedroom was not used regularly by any of the residents, but that any visitor or resident, including the other "Okemi Lawton," may have stored items there. Although defendant Okemi Lawton had stayed at the house the night before the warrant was executed, he generally only stayed there once or twice per week.

## ANALYSIS

Defendant's motion identifies several issues he contends justify suppression of evidence. First, he challenges various aspects of the search of the residence; (1) that the warrant was not properly executed, (2) that there is insufficient evidence of a connection between the gun and drugs, (3) that the search warrant failed to authorize a search for or seizure of firearms, and (4) that the discovery of the gun was the fruit of a prior unconstitutional search. *See* doc. 42-2 at 3-4, 5-6. Second, he challenges the propriety of the seizure of his person and, thus, the admissibility of statements he made while in custody. *Id.* at 6-7.

## I.  Premises Search

Lawton's arguments that the search of the residence violated the Fourth Amendment begin with officers' entry.  First, he argues that the search of the residence, pursuant to a warrant, violated the Fourth Amendment because officers used excessive force in entering.  *See* doc. 42-2 at 3-4.  He contends that they failed to knock and announce their presence, despite the absence of a "no knock" provision in the warrant, and instead "kicked in [the] front door, shouting 'Police.'"  Doc. 42-1 at 5; *see also* doc. 42-2 at 4.  The Government counters that "police appropriately knocked and announced their presence."  Doc. 45 at 3.  Even if they had not, however, the Government contends that suppression would not be an appropriate remedy.  *Id.*  at 4.  The Government gets the law right.

Even assuming that the manner of the officers' entry of the home violated the Fourth Amendment, suppression is not the appropriate remedy.  "In this case, of course, the constitutional violation of an illegal *manner* of entry was *not* a but-for cause of obtaining the evidence.  Whether that preliminary misstep had occurred *or not*, the police would have executed the warrant they had obtained . . . ."  *Hudson v. Michigan*,

547 U.S. 586, 592 (2006); *see also Timmerman v. United States*, 2019 WL 4023607, at * 4 (S.D. Ga. July 25, 2019) ("[E]ven if there was a knock and announce violation, . . . the violation would not warrant suppression of the evidence seized during execution of the search warrant."); *United States v. Clark*, 2012 WL 2317622, at * 1 (S.D. Ga. June 18, 2012) ("The point of the *Hudson* decision is that the purposes that undergird the exclusionary rule are not served by suppressing evidence simply because the officers neglect to knock and announce their entry."). As the Supreme Court has recognized, "civil liability is an effective deterrent," to knock-and-announce violations. *Hudson*, 547 U.S. at 598. To the extent that Lawton seeks to suppress evidence based on an alleged violation of the knock-and-announce rule, his motion should be **DENIED**.

Second, Lawton argues that the Government has produced "no evidence . . . showing that the Defendant had access to [the] weapon [discovered in the search of the house] during any part of his alleged criminal undertaking." Doc. 42-2 at 5. Whatever the state of the evidence, it is irrelevant to suppression. Presumably, Lawton challenges the viability of the charge against him for possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

Doc. 1 at 2. However, as this Court has explained, challenges to the sufficiency of the Government's evidence are simply not cognizable in pretrial criminal proceedings. *See, e.g., United States v. Stewart*, 2017 WL 6884342, at * 1 (S.D. Ga. Dec. 11, 2017) ("A federal court may not assess the sufficiency of the evidence supporting an indictment obtained from an unbiased grand jury."); *see also United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992) ("There is no summary judgment procedure in criminal cases."). Lawton's challenge to the sufficiency of the evidence, therefore, should be **DENIED**.

Third, Lawton notes that the warrant for the search did not identify firearms among the items to be searched for and seized.[3] *See* doc. 42-2 at 5; *see also* doc. 42-1 at 1 (Search Warrant). He contends that this

---

[3] Uncertainty about Lawton's standing is an issue here. Given the evidence that he was not a resident or a guest in the back bedroom, Lawton has not established his standing to challenge the search of the back bedroom where the gun was found. Even assuming he had a reasonable expectation of privacy in the location, however, if it did not belong to him, its seizure did not interfere with any of *his* constitutional rights. *See, e.g., Texas v. Brown*, 460 U.S. 730, 747 (1983) (Stevens, J. concurring) ("The [Fourth] Amendment protects two different interests of the citizen—the interest in retaining possession of property and the interest in maintaining personal privacy. A seizure threatens the former, a search the latter."). If, as the testimony defense counsel elicited from Ms. Lawton at the hearing implied, the gun was placed in the back bedroom by another occupant of or visitor to the house, and Lawton did not reside there, it is unclear what interest *of his* he contends was violated when the gun was seized. The fact that neither party raised the standing issue and that, regardless of his standing, his challenge to the seizure of the gun fails, moots the issue.

8

omission renders its seizure invalid. Doc. 42-2 at 5. The Government counters that "[t]he Eleventh Circuit has routinely recognized that firearms can be so connected to the sale of narcotics that their seizure is implicitly authorized by a warrant to search for narcotics." Doc. 45 at 4-5 (collecting cases). The Government further points out that, even if it did not implicitly authorize the gun's seizure, it's seizure would still be valid under the "plain view" exception to the warrant requirement. Doc. 45 at 5-6.

At the hearing, the Government expanded on its plain-view argument. Since the Court concludes that the gun was legitimately seized pursuant to the plain-view doctrine, it need not reach the question of whether a warrant authorizing the search for and seizure of drugs implicitly authorizes the seizure of a gun. The application of the plain-view doctrine is established by several independently sufficient facts. First, officers' knowledge of Lawton's criminal history, provided by Agent Baker at their briefing, made his possession of a firearm clearly criminal. Further, even after officers discovered the gun, they did not seize it until they had confirmed that it was stolen. The reasonable belief that the gun

was contraband because of Lawton's known criminal history and the subsequent determination that it was stolen justify its seizure.

Lawton does not dispute the validity of the search warrant. Thus, officers were lawfully present in the home. He has also not suggested that they exceeded the scope of the warrant by searching the area where they discovered the gun. Doc. 45-1 at 5-6 (specifying cocaine, marijuana, currency bearing specific serial numbers, cell phones, and "baggies, scales" as items to be searched for and seized). The facts of the gun's discovery, therefore, are indistinguishable from the facts at issue in *Horton v. California*, 496 U.S. 128 (1990). In *Horton*, police searched a residence pursuant to a warrant and, in the process, discovered weapons not specified in the warrant. *Id.* at 131. The Court concluded that because "the items seized . . . were discovered during a lawful search authorized by a valid warrant," and their incriminating character was immediately apparent, the seizure was authorized by the "plain-view" doctrine. *Id.* at 142. Although officers here went through an additional step of confirming that the gun was stolen before seizing it, that only served to strengthen their justification for seizing it.

The affidavit supporting the warrant application clearly indicates officers' awareness, prior to the gun's discovery, that Lawton was a convicted felon. *See* doc. 45-1 at 1-2. The incriminating character of a firearm in his possession was, therefore, immediately apparent. As the Eleventh Circuit succinctly puts it: "A firearm that reasonably appears to be in the possession of a convicted felon qualifies as contraband—and is therefore subject to seizure under the plain view doctrine." *United States v. Folk*, 754 F.3d 905, (11th Cir. 2014) (collecting cases); *see also United States v. Hill*, 2014 WL 5410214, at * (S.D. Ga. Oct. 23, 2014) (finding that "the warrant's scope is immaterial . . . because the plain view doctrine authorized the seizure" of a firearm). As the Government also points out (albeit in the context of its argument that the warrant implicitly authorized the seizure), the Eleventh Circuit has expressly recognized the reasonableness of seizing firearms discovered during lawful searches for drugs. *See* doc. 45 at 5 (citing, *inter alia*, *United States v. Prather*, 279 F. App'x 761, 766 (11th Cir. 2008) ("When law enforcement officers stumble across hidden guns during a lawful search for drugs, they are allowed to draw the reasonable inference that the guns may be related to drug trafficking occurring at the location.").

Moreover, before officers seized the gun, Agent Baker testified that they checked its serial number and determined it was reported stolen. Since the gun was found in plain view during the course of a lawful search, the additional investigatory step of recording and querying its serial numbers did not constitute a further search. In similar circumstances courts have recognized that such inquiries are justified extensions of the plain-view doctrine. *See United States v. Armstrong*, 2007 WL 1175846, at * 7 (D. Minn. Apr. 20, 2007); *United States v. Long*, 2005 WL 2807123, at * 8 (W.D. Pa. Oct. 27, 2005) ("the police having 'legally come into possession of the gun . . . were entitled, if not expected, to note and record its serial number.'" (quoting *United States v. Wallace*, 889 F.2d 580, 583 (5th Cir. 1989)). Even if the gun's discovery only raised the reasonable suspicion that it was related to the drug evidence expressly covered by the warrant, the officers' search of the serial number was a perfectly reasonable step to confirm or refute those suspicions. *See Long*, 2005 WL 2807123, at * 8 ("[O]nce police officers come into legal possession of [firearms' serial numbers], they have an affirmative duty to use the least intrusive methods reasonably available to confirm or dispel their suspicions of criminal behavior. Determining if a gun is stolen is

quickly and unintrusively accomplished by comparing its serial number against a computerized database.").

Lawton does not dispute that officers were authorized by the warrant to search the residence for drugs. While conducting that authorized search, they discovered a gun in close proximity to evidence of drug trafficking. Based on that proximity and their knowledge that Lawton was a convicted felon, they had, at least, reasonable suspicion that the firearm was contraband. Even assuming that the circumstances of their initial discovery alone did not justify the gun's seizure, they certainly warranted the further investigative step of checking its serial number. Once the serial number confirmed that the gun was stolen, its contraband character was confirmed. Since the gun's seizure was justified by the plain-view doctrine, to the extent that Lawton's motion seeks to suppress it, therefore, it should be **DENIED**.

Fourth, and finally, Lawton argues, in a purely conclusory fashion, that the seized firearm should be excluded as "fruit of the poisonous tree." Doc. 42-2 at 5-6. He does not, however, identify what he contends was the underlying Fourth Amendment violation. As discussed above, the residence was searched pursuant to a warrant whose validity Lawton

does not challenge.  *Hudson* forecloses any argument that a knock-and-announce violation can provide the initial Fourth Amendment violation for a fruit-of-the-poisonous-tree argument.  *See Hudson*, 547 U.S. at 592 (quoting *Segura v. United States*, 468 U.S. 796, 815 (1984)) ("'[W]e have never held that evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police.'").  Where, as here, "[t]he [hypothetically] illegal entry into [the premises at issue] did not contribute in any way to discovery of the evidence seized under the warrant," the exclusionary rule does not apply.  *Segura*, 468 U.S. at 815.  Further, as discussed above, officers did not exceed the warrant's scope by seizing a gun found in the course of their authorized search for drugs.  If neither the initial entry—even supposing it violated the Fourth Amendment—nor the seizure of the gun poisoned the "tree," its "fruit," *i.e.* the firearm discovered, remains perfectly palatable.

## II.    Lawton's Arrest

Lawton's argument that any statements he made, prior to being informed of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and execution of a written waiver, should be suppressed begins with his contention that his initial detention violated the Fourth Amendment.  *See*

doc. 42-2 at 6-7. He points out that, although the search warrant included specific permission to conduct a search of his person, "it did not authorize that he be taken into custody." *Id.* at 6. When officers detained him at the gas station and transported him back to the residence, he was effectively arrested, he contends, without probable cause. *Id.* Since he was in custody, any statement he made prior to being informed of his rights was involuntary and thus suppressible. *Id.* at 7. The Government responds, on the contrary, that his detention was permissible and that there was no interrogation between the time he was detained and the time he executed the written *Miranda* waiver. Doc. 45 at 6-7.

In strikingly similar circumstances, the Eleventh Circuit held that an officer had probable cause to arrest a suspect where: "[p]rior to the execution of the search warrant, a police detective observed a confidential informant make two controlled purchases of drugs from [the defendant]." *United States v. Rucker*, 588 F. App'x 943, 946 (11th Cir. 2014). Here, Agent Baker had observed video and audio recordings of an individual he identified as Lawton engaging in multiple drug sales to CI's. Further, he had communicated that information to the other officers involved in executing the warrant, including Agent Boger. The officers who detained

Lawton, therefore, had sufficient probable cause to arrest Lawton, regardless of his proximity to the residence.

Given that officers had probable cause to arrest Lawton, his detention was not an unreasonable seizure. *See Rucker*, 588 F. App'x at 946 ("Because there was probable cause to arrest [defendant], his arrest was not an unreasonable seizure and the district court did not err by admitting his post-arrest statements."). Moreover, based on the available record, it is not clear that Lawton made *any* statement after he was detained, but before he was formally arrested, informed of his rights, and agreed to waive them. Even if he had made a statement during that period, however, it would not be inadmissible on the grounds that his detention was an unreasonable seizure. His motion to suppress any such statements, therefore, should be **DENIED**.

Despite arguing that officers had probable cause to arrest Lawton, the Government, nevertheless, principally relies on the search warrant to justify his detention. *See* doc. 45 at 6-7. Because of the Government's reliance on that argument, and its flaws discussed below, a more detailed discussion is warranted.

The Government's argument that the search warrant justified Lawton's detention relies primarily on *United States v. Perez.* Doc. 45 at 6-7. In *Perez* the defendant was legitimately seized pursuant to a warrant when he was "on his way back to the residence," police had a warrant to search, which included an authorization to search defendant's person, "but changed course upon observing police executing a search warrant of the residence." 629 F. App'x 699, 704 (6th Cir. 2015). The *Perez* court was expressly concerned that suppressing the evidence arising from defendant's seizure "would be tantamount to saying a suspect can affect the constitutionality of a warrant by fleeing." *Id.* at 705. Here, Lawton left the residence "[j]ust *prior* to the execution of the search warrant . . .," doc. 45 at 3 (emphasis added); there is *no* suggestion that he was evading the warrant's execution. *Perez*, therefore, does not obviously justify the detention.

As the Government recognizes, *Bailey v. United States*, 568 U.S. 186 (2013), presents a much more compelling analogy to the facts here. *See* doc. 45 at 6. In response to that recognition, the Government offers a superficially persuasive distinction, but no more. *Bailey* stands for the proposition that, while the occupants of a premises subject to a search

warrant may be detained pursuant to that warrant, "[o]nce an individual has left the immediate vicinity of a premises to be searched . . . detentions must be justified by some other rationale." *Id.* at 202.

The Government correctly points out that *Bailey* is distinguishable because the warrant at issue there did not provide for a search of the defendant's person.[4]  Doc. 45 at 6.  Nevertheless, *Bailey* is emphatic that "[a]n exception to the Fourth Amendment rule prohibiting detention absent probable cause must not diverge from its purpose and rationale." 568 U.S. at 194.  Given that limitation concern, the Government's distinction simply makes no difference.  *See United States v. Gildersleeve*, 2013 WL 1908049, at * 8 (W.D.N.Y. Apr. 19, 2013) (rejecting Government's "conclusory" contention "that because the search warrant

---

[4] It is notable that the Government does *not* argue that the warrant's authorization to search Lawton's person authorized his detention.  The viability of such an argument is dubious, at best.  As a prominent treatise summarizes, "if the command of the search warrant is that the described person be searched only at a particular location, then the search of that person elsewhere exceeds the authority granted by the warrant."  2 WAYNE R. LAFAVE, *et al.*, SEARCH & SEIZURE § 4.5(e) (5th ed. 2019).  The warrant at issue clearly authorizes the search of 306 Woodley Road, and indicates that "[t]he person of Okemi Lawton," is authorized to be searched *at that location*.  Doc. 45-1 at 5.  Notably, the section of the warrant where the "information of person to be searched" can be supplied is left blank.  *Id.*  Given that the Government has not asserted authority to seize Lawton pursuant to the warrant to search his person explicitly, the Court declines to consider it.

. . . authorized the search of [defendant's] person, that fact 'takes this case out of the *Bailey* analysis.'").

The *Bailey* Court clearly articulated the "purpose and rationale" of allowing police to detain individuals pursuant to a premises search warrant. *See* 568 U.S. at 194. Those purposes are, "officer safety, facilitating the completion of the search, and preventing flight." *Id.* Despite the force of those interests, "[l]imiting the rule . . . to the area in which an occupant poses a real threat to the safe and efficient execution of a search warrant ensures that the scope of the detention incident to the search is confined to its underlying justification. *Once an occupant is beyond the immediate vicinity of the premises to be searched, the search-related law enforcement interests are diminished and the intrusiveness of the detention is more severe.*" *Id.* at 201. Given the Court's suggested factors for determining whether a detention occurred in a premises' "immediate vicinity," there seems to be little doubt that Lawton was *not* in the immediate vicinity when he was detained. *See id.* (factors include "the lawful limits of the premises, whether the occupant was within the line of sight of his dwelling, the ease of reentry . . ."). The warrant to

search the residence, then, does not justify Lawton's detention at the gas station.

## CONCLUSION

In summary, Lawton's motion to suppress physical evidence and statements should be **DENIED**. Doc. 42. This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*,

648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this 27th day of November, 2019.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA